No. 20,106.

BRINKLEY B. BROWN, ET AL., *v.* MALCOLM JOLLEY.
(387 P. [2d] 278)

Decided November 26, 1963.    Rehearing denied December 16, 1963.

Mr. FRANK DELANEY, for plaintiffs in error.

Mr. WM. ATHA MASON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

MALCOLM JOLLEY, to whom we will refer as the plaintiff, commenced an action in the district court of Garfield county against Brinkley B. Brown in which he sought to enjoin the latter from interfering in the use and enjoyment by plaintiff of a road across lands of Brown. Said plaintiff in another action sought the same relief as against Malcolm C. Jolley, Henry Jolley, and Mabel Jolley, who also owned land which was traversed by the extension of the same road involved in the case first above mentioned. The parties will be referred to as they appeared in the trial court.

The rights asserted by plaintiff in each of said cases were based upon the same set of facts, and in large measure the several defendants depended upon identical facts as justification for their conduct. The two cases were accordingly consolidated for trial. The trial court resolved the issues against all of the defendants, and they are here on one writ of error seeking reversal of the judgment granting the injunctive relief prayed for by plaintiff.

Each complaint filed by plaintiff in said actions contains five separate claims. It is alleged by him: (1) that he is the owner of an easement over and across the lands of defendants; (2) that the roadway in dispute is a public highway as provided in C.R.S. '53, 120-1-1(1), that the road as it extends across the lands of Brown was ded-

icated to the public use by deed dated and recorded in 1920, and that said dedication was accepted by the county commissioners and the public, and that plaintiff, his predecessors in interest, and the public have continuously used said road for more than thirty years and that the defendants commencing in 1957 have interfered with the use of said highway by plaintiff; (3) that the roadway has never been "vacated" by the county commissioners; (4) that the road has been improved and maintained by the county; and (5) that said road was used by the plaintiff and his predecessors in interest and by the public before patent issued to the lands owned by defendants and said roadway was established while said lands were a part of the public domain.

The defendants admitted ownership of the lands across which the road passed, but denied the allegations upon which plaintiff based his claim for injunctive relief. Various counterclaims were asserted by the defendants which were disposed of by the judgment entered by the trial court. This writ of error does not involve the counterclaims or the judgment of the trial court entered with respect thereto, and they will not be mentioned further.

The issues were tried to the court and nine days were consumed in the trial. The court entered detailed Findings of Fact from which we quote the following:

"On August 6, 1935, Rose E. Boland executed a right of way deed, (Plaintiff's Exhibit "L") to the United States of America and to the "public generally," for access to the Public Domain and the Blue Lake area. The lower end of said easement connects with a road which is the subject matter of this action. Such Boland land was purchased by the defendant Brinkley B. Brown on August 1, 1957, and ever since said date he has been, and still is, the owner of and in possession of said land, but subject to the aforesaid easement.

\* \* \*

"FOURTH: Some time prior to the year 1917, a road

traversing the said lands of the defendants was established and used by the public. A petition was presented to the Board of County Commissioners of Garfield County, Colorado, on July 9, 1918, for said road, which was thereafter viewed and surveyed. In July, 1920, for a consideration of $75.00, Andrew J. Keyser, the predecessor in interest of the defendant Mabel Jolley, executed and delivered a quit-claim deed to the Board of County Commissioners of Garfield County, Colorado, (Plaintiff's Exhibit "M"), covering the road as it extended across the Keyser property, described as follows:

"(Here is included a metes and bounds description of said right of way showing it to be thirty feet on each side of a center line.)

"Commencing in the year 1934, the County graded the road, installed culverts, and thereafter maintained the road each year to July, 1957. The road in controversy was dropped as a primary road from the County road system on a map adopted by the County Commissioners on October 9, 1953, (Defendants' Exhibit "22"), but the road was open for public use at all times from its inception until shortly after the defendant Brinkley B. Brown acquired the Rose Boland property in 1957. He had knowledge of the existence of the road.

"In July, 1957, the defendants placed gates across the road and installed signs upon the gates purporting to warn the public that the road was private property. The gate installed by the defendants Malcolm C. Jolley, Henry Jolley and Mabel Jolley was located on Public Domain held by them under lease.

\* \* \*

"The line of travel of the road in controversy has been the same, except for occasional deviations brought about by storms, temporary obstructions, and for the convenience of the defendants Malcolm C. Jolley, Henry Jolley, and Mabel Jolley. The road and right of way traversing the lands of the plaintiff and of the defendants, as in

place and now being used, is described as follows, to-wit:

"(Here follows a full metes and bounds description of a 60 foot right of way.)

"Without the use of said road and right of way, the plaintiff would be without a way of ingress and egress to and from his lands and would thereby be deprived of the use of his lands. To deprive the plaintiff of the use of the road, would cause him to suffer irreparable damage and injury which would be difficult or impossible of ascertainment. Without the use of the road, the general public would be deprived of the use of the Blue Lake trail and of the said road as it leads to the plaintiff's land.

"The road has definite termini. It extends across Public Domain and patented land. It has been recognized by public authorities as a public road and public funds have been expended upon its construction, maintenance, and repair. Aside from the county road proceedings mentioned herein, the public, including the plaintiff, have used said road adversely, without interruption or objection on the part of the owners of the respective lands through which the same traverses for more than twenty consecutive years."

The Conclusions of Law entered by the trial court contains the following:

"1. The road in controversy, as it traverses the lands of the defendants and of the plaintiff herein, is a public road. The segment of the road established over Public Domain prior to issuance of patent, became a public road under the statute of the United States, Title 43, U.S.C.A., Sec. 932. A road or portion of a road open to public traffic prior to the enactment of 1953 C.R.S. 120-3-2, is a public highway.

"Any irregularity that might have existed in the Road Viewer's Proceedings in evidence herein cannot be relied upon at this late date to invalidate such proceedings. The road established by such proceedings, as modi-

fied by the quit-claim deed from A. J. Keyser, has become a public road. Such road, if not legally established by the County Road Proceedings, has become a public road through adverse use by the public for more than twenty years prior to the commencement of this action. The elimination of said road from the system of county roads by the county, did not destroy the rights of the public in and to the use of such road. The road, nevertheless, remains a public road.

"2. That the plaintiff is entitled to injunctive relief against the defendant Brinkley B. Brown as demanded in his amended complaint in Civil Action No. 5216.

"3. That the plaintiff is entitled to injunctive relief against the defendants Malcolm C. Jolley, Henry Jolley, and Mabel Jolley as demanded in his amended complaint in Civil Action No. 5253. * * * "

As grounds for reversal of the judgment it is argued, inter alia, that:

1. The trial court erred in holding that a public road had been established.

2. The trial court erred in receiving evidence of a proceeding before the Board of County Commissioners concerning an attempt to establish a road under a statute then in existence. Said proceedings were commenced in 1918 and concluded in 1920. It is argued that these proceedings were undertaken under the provisions of Sections 44 to 52, chapter 143, C.S.A. 1935, (all of which were repealed by an act of the legislature in 1953). The argument is that full compliance with the said sections was not shown by the evidence, by reason of which the entire proceeding was a nullity, and that no public road could be established across lands of the defendants unless full compliance with said statutes was shown.

Several other assignments of error are urged which, in essence, amount to an argument that there was insufficient evidence to sustain particular findings of fact made by the trial court, and that the conclusion of law

that a public road had been established, was erroneous.

Addressing ourselves to the second assignment above mentioned, we cannot agree with counsel for defendants in his contention that the exclusive method of establishing the road in dispute as a public highway was to affirmatively show full compliance with the above mentioned statute. Even prior to the repeal of the statutes relied upon by defendants, public highways and easements over public and private lands for highway purposes were created by other means. The trial court did not base its judgment upon the assumption that said statutes had been complied with, or upon the conclusion that they controlled the question of whether a public road had been established.

The proceedings before the county commissioners as shown by the existing records were properly before the trial court for consideration in determining the location of the road as related to a user thereof by the public. They were proper for consideration as they tended to corroborate or dispute the testimony of witnesses who appeared.

The record before us is composed of three large bound volumes. It is made up of 1862 folios, all of which we have read and carefully considered as related to pertinent findings of the trial court. It is sufficient to say that there is ample evidence to support them and we will not set aside findings of fact which have substantial evidentiary support.

An Act of Congress, U.S.C.A. Title 43, Sec. 932, provides: "The right of way for the construction of highways over public lands, not reserved for public uses is hereby granted."

The creation of a highway over public lands and use thereof by the public is an acceptance of the congressional grant. *The Estes Park Toll Road Co. v. Edwards,* 3 C.A. 74, 32 Pac. 549; *Sprague v. Stead,* 56 Colo. 538, 139 Pac. 544. With reference to the Act of Congress

hereinabove quoted this court, in *Leach v. Manhart,* 102 Colo. 129, 77 P. (2d) 652, said:

"The premises considered, we think a statute of the United States enacted in 1866 (R.S. § 2477, U.S. Comp. Stat. 1918, § 4919, Title 43, U.S.C.A. § 932), reading as follows: 'The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted,' is controlling. We have had occasion to consider that statute in varying situations. See *Sprague v. Stead,* 56 Colo. 538, 139 Pac. 544; *Greiner v. Board of County Commissioners,* 64 Colo. 584, 173 Pac. 719; *Dunbar v. Kohler,* 66 Colo. 272, 180 Pac. 739; *Nicolas v. Grassle,* 83 Colo. 536, 267 Pac. 196; *Korf v. Itten,* 64 Colo. 3, 169 Pac. 148. The sum of our holdings is that the statute is an express dedication of a right of way for roads over unappropriated government lands, acceptance of which by the public results from 'use by those for whom it was necessary or convenient.' It is not required that 'work' shall be done on such a road, or that public authorities shall take action in the premises. User is the requisite element, and it may be by any who have occasion to travel over public lands, and if the use be by only one, still it suffices. 'A road may be a highway though it reaches but one property owner. 29 C. J. 367. He has a right to access to other roads and the public has a right of access to him. *Pagels v. Oaks,* 64 Iowa 198, 19 N.W. 905, 907. Its character is not determined by the fact that but few persons use it.' Mr. Chief Justice Denison, speaking for the court in *Nicolas v. Grassle,* supra. But, it seems, where before the time when a board of county commissioners, proceeding under '35 C.S.A., chapter 143, section 44 (C.L. 1921, section 1290), has declared a section line to be a public highway, the lands involved have been entered as homesteads, subsequent relinquishment of the entries does not operate to make effective the county board's declaration. *Korf v. Itten,* supra."

In the instant case when the road in dispute was first established, most of the lands presently owned by defendants were a part of the public domain.

■ C.R.S. '53, 120-1-1, contains the following pertinent language:

"The following are hereby declared to be public highways: * * *

"(3) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years.

        \*     \*     \*

"(5) All roads over the public domain, whether agricultural or mineral."

C.R.S. '53, 120-3-2, originally adopted in 1921 and thereafter amended without change insofar as pertinence to this controversy is concerned, reads as follows:

"All roads and highways which are, at the time of the passage of this article, by law open to public traffic shall be public highways, within the meaning of this article."

The opinion of this court in *Martino v. Board of County Commissioners,* 146 Colo. 143, 360 P. (2d) 804, contains a reference to numerous decisions bearing upon the issues here involved. The principles applied in that case are equally applicable here.

In *Town of Silver Plume v. Hudson,* 151 Colo. 394, 380 P. (2d) 59, we find: "It is undisputed that the area in question has been used without interruption as a public highway for more than twenty years. It also is undisputed that during that period of time its use by the public as a highway was open, notorious, and adverse to the title of the owners of the land, both before and after issuance of the tax deeds. The cases relied upon by plaintiffs are clearly distinguishable from the case at bar upon the facts."

In the instant case the court did not err in decreeing

that the road was a "public highway" as that term is defined by C.R.S. '53, 120-1-1.

.The judgment is affirmed.

MR. CHIEF JUSTICE FRANTZ and MR. JUSTICE PRINGLE concur.