867 P.2d 427

**A.R. LOPEZ and Angelina C. Lopez, his wife, Plaintiffs–Appellants,**

v.

**Robert D. ADAMS, et al., Defendants–Appellees.**

No. 13931.

Court of Appeals of New Mexico.

Dec. 2, 1993.

Certiorari Denied Jan. 10, 1994.

Diane P. Donaghy, Hatch, Allen & Shepherd, P.A., Albuquerque, for plaintiffs-appellants.

Thomas G. Fitch, Socorro, for defendants-appellees.

## OPINION

BIVINS, Judge.

Plaintiffs appeal a quiet title judgment. Plaintiffs sought to quiet title to three tracts of land (Tracts One, Two, and Three) in an area known as "Lopezville" in the City of Socorro. They additionally sought ejectment of Defendants from these tracts. Plaintiffs, however, prevailed on these issues only as to the western part of Tract One. Plaintiffs appeal, contesting the sufficiency of the evidence to support the determination of the trial court. Plaintiffs additionally appeal a denial of an action for slander of title and also claim the trial court erred in both improperly quieting title in favor of one Defendant and in ruling on issues outside the pleadings. We affirm.

■ Sufficiency of the evidence was contested by Plaintiffs regarding all the tracts. In an appeal from a quiet title action, alleging insufficiency of the evidence, this Court reviews only evidence favorable to the findings of the trial court. *Stone v. Turner,* 106 N.M. 82, 85, 738 P.2d 1327, 1330 (Ct.App.), *cert. quashed,* 106 N.M. 35, 738 P.2d 907 (1987). It is for the trial court to weigh the testimony, determine the credibility of witnesses, reconcile inconsistent statements and determine where the truth lies. *Luchetti v. Bandler,* 108 N.M. 682, 684, 777 P.2d 1326, 1328 (Ct.App.), *cert. denied,* 108 N.M. 681, 777 P.2d 1325 (1989). If a finding is made against the party with the burden of proof, we can affirm if it was rational for the trial court to disbelieve the evidence offered by that party. *Id.* 108 N.M. at 684–85, 777 P.2d at 1328–29; *Sosa v. Empire Roofing Co.,* 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App. 1990). We now dispose of the issues by the tract in which they arose.

## TRACT ONE

Tract One is a piece of open land bounded on the west by the New Mexico Institute of Mining and Technology, on the north by the property of Defendants, Richard and Danny Lopez, on the east by the property of Defendant, Emma Lopez, and on the south by Plaintiffs' property. The property originally belonged to Rafael Lopez y Luna, an ancestor of both Plaintiffs and Defendants, who apparently never deeded the property to anyone.

Sometime in the 1950s, Plaintiffs' father, Martin Lopez, discovered that there was no deed for this particular tract and that no one was paying taxes on it. He thus began paying taxes and, later in 1964, deeded it to Plaintiffs. Plaintiffs continued to pay taxes on it. The property was used for general family enjoyment and, in the 1960s, to keep ponies.

In 1984, Defendant, Richard Lopez, also discovered that there was no original deed to the property on Tract One. He thus attempted to acquire deeds from various heirs of Rafael Lopez y Luna in order to establish title to the tract. He then split the land with

his brother Danny. On the eastern part of Tract One, Danny Lopez had several animal pens on the property that he stated had been there since he was a child. There was also evidence that an outhouse was located on the property for use by Richard Lopez' family in the 1960s, evidence that Richard Lopez had a hole dug to be used as a pond and evidence that he had cleared some of the land in the 1970s on the eastern portion of Tract One.

■ Undoubtedly because of these activities, Plaintiffs brought an action to quiet title to the property. Since there was no chain of title for Tract One, Plaintiffs had to prove title by adverse possession. Adverse possession requires a showing of "(1) actual, visible, exclusive, hostile and continuous possession; (2) under color of title; (3) for a period of ten years." *Esquibel v. Hallmark*, 92 N.M. 254, 256, 586 P.2d 1083, 1085 (1978); *see also Williams v. Howell*, 108 N.M. 225, 227, 770 P.2d 870, 872 (1989). Payment of taxes is also required. NMSA 1978, § 37–1–22 (Repl.Pamp.1990); *see also Williams*, 108 N.M. at 227, 770 P.2d at 872. The trial court determined that Plaintiffs established a good faith color of title with the 1964 deed from Plaintiffs' father, Martin Lopez. Plaintiffs also showed that they had paid taxes since 1964 on the property. Thus, the trial court determined that Plaintiffs had proved title by adverse possession and acquiescence of the northern boundary; however, the trial court limited the finding to the western portion of Tract One. For the eastern portion of the property, the trial court determined Plaintiffs did not show open, notorious and exclusive possession and so they could not prevail because they failed to satisfy all of the requirements of adverse possession. Plaintiffs contend that this decision cannot stand. They argue that finding possession for one part of the property and not for another is inconsistent and that the trial court's determination is without support in the evidence. We disagree.

■ There was sufficient evidence of use of the eastern portion of the property by others, including Danny and Richard Lopez and their predecessors in interest, so that Plaintiffs' use was not uninterrupted and exclusive for a ten-year period, thereby precluding a finding of adverse possession in favor of Plaintiffs. Plaintiffs, however, claim that the only evidence of others using the property is disputed evidence. It is not, however, this Court's role to evaluate disputed evidence and determine where the truth lies. *See Luchetti*, 108 N.M. at 684, 777 P.2d at 1328. That is for the trial court, and here, even if the evidence is disputed, there is at least some evidence that would support the determination of the trial court that the eastern portion of Tract One was not adversely possessed. *See id.* The eastern portion of Tract One which the trial court determined Plaintiffs did not possess was the portion occupied by Defendants' animal pens and the old outhouse. Clearly, this could establish use by persons other than Plaintiffs, which would preclude exclusive, uninterrupted possession by Plaintiffs on that section of Tract One.

■ With regard to Tract One, Plaintiffs additionally appeal the trial court's determination that there had been no slander of title. We agree with the trial court that there was no slander of title because title to the property could not be ascertained until the trial court rendered its decision. *See Howard v. Schaniel*, 113 Cal.App.3d 256, 169 Cal.Rptr. 678, 682–83 (1980) (concluding that slander of title cannot be applied to title acquired by adverse possession not established by decree); *see also Herring v. Behlmann*, 734 S.W.2d 311, 313 (Mo.Ct.App.1987) (holding record holder not liable to adverse possessor for slander of title for requiring adverse possessor to prove his claim). *See generally* Jeffrey F. Ghant, Annotation, *Slander of Title: Sufficiency of Plaintiff's Interest in Real Property to Maintain Action*, 86 A.L.R.4th 738 (1991). Thus, we determine that Plaintiffs misconstrue the holding in *Den–Gar Enterprises v. Romero*, 94 N.M. 425, 611 P.2d 1119 (Ct.App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980), on which they rely.

Although we agree that a quiet title action may also include a cause of action for slander of title, based on the above authority, we hold that where the claim of title is based on adverse possession, which has not yet been decreed, rather than chain of title, there is no basis for slander of title. We arrive at this

result because the adverse possession is not established until the actual decree. Thus, the trial court could have determined that Richard and Danny Lopez' attempt to obtain and record deeds to the property was not slander against Plaintiffs' rights because it was not clear who had the property right to Tract One at that time.

## TRACT TWO

Tract Two is a triangular piece of land claimed by Plaintiffs and Defendant, Emma Lopez. It is located south of the road used to access certain Lopez family properties and north of Plaintiffs' property. Plaintiffs contend that their property extends north to the road and thus sought to quiet title to that portion of land. Emma Lopez, in her answer, claimed that the property belonged to her, having been deeded to her by her father. The trial court subsequently determined that, as between the parties, the property belonged to Emma Lopez.

■ Plaintiffs appeal, claiming that the trial court could not award Emma Lopez the property in Tract Two without requiring her to counterclaim. To support their argument, they cite to *Priest v. Board of Trustees*, 16 N.M. 692, 120 P. 894 (1911), *aff'd*, 232 U.S. 604, 34 S.Ct. 443, 58 L.Ed. 751 (1914); however, their reliance is misplaced. In the case at hand, Plaintiffs made a claim for the property, and Emma Lopez defended against the claim by showing that it was hers. She did not need to file a counterclaim to establish that the property was hers. Contrary to what Plaintiffs argue, the trial court did not quiet title in Tract Two to Emma Lopez, but merely determined that as between the parties, Emma Lopez was the owner of Tract Two.

■ Plaintiffs additionally contend that the trial court's determination is unsupported by the evidence. However, Plaintiffs did not pay taxes on the property until 1989 and did not show open, hostile possession of the property such to satisfy the requirements for acquiring the property by adverse possession. On the contrary, Emma Lopez testified that she received the property from her mother and father. She testified that the road encroached on her property and that

her property extended to the south of the road. She also testified that her family at one time had an outhouse south of where the road was located.

Plaintiffs argue that Emma Lopez relied on deeds for her claim and that the deeds consistently drew the boundary at the road. They argue that because the evidence supporting the claim here is documentary, this Court may review the deeds and determine that Emma Lopez did not own the property. *See Brooks v. Tanner*, 101 N.M. 203, 205, 680 P.2d 343, 345 (1984). The evidence here, however, was not entirely documentary, and we cannot ignore the testimony of Emma Lopez, who consistently stated that her property extended south of the family road. Thus, we conclude there was sufficient evidence to support the trial court's determination that as between the parties, Tract Two belonged to Emma Lopez and that Plaintiffs did not prove their title.

## TRACT THREE

Tract Three is a piece of property partially owned by Plaintiffs and partially owned by Defendant, Rita Tafoya. At issue is not the ownership of the entire property but the location of the boundary line between Plaintiffs' northern half and Rita Tafoya's southern half. Plaintiffs' complaint sought to quiet title to the southern half of City Survey 306 (C.S. 306), Tract Three, and Rita Tafoya subsequently counterclaimed for quiet title to the same property. The trial court found in favor of Rita Tafoya and determined that the boundary should be in accordance with a survey known as the West survey. Plaintiffs now contend that the evidence does not support such a determination.

■ Plaintiffs first claim that Rita Tafoya's counterclaim to quiet title to her portion of C.S. 306 was invalid because she did not serve other Defendants. The fact is that there was never any dispute of ownership, so no other Defendants were involved. The dispute was merely over the location of the boundary between Rita Tafoya's and Plaintiffs' land. Further, all the other Defendants had been served the complaint by Plaintiffs and none responded with regard to Tract

Three. Therefore, no one claimed interest to C.S. 306 except Plaintiffs and Rita Tafoya.

 Plaintiffs also claim that the trial court's determination is not supported by sufficient evidence. We disagree. The property outlined in C.S. 306 was originally owned by Martin Lopez, who transferred the property to his two sons, Martin Lopez Jr. and Pedro Lopez. The sons agreed to a partitioning of the property, with Martin Lopez Jr. retaining title to the north half and Pedro Lopez retaining title to the south half. Martin Lopez Jr. then transferred the north half to Plaintiffs. Pedro Lopez, however, died intestate, leaving as his heirs Ernest, Henry, Frutoso, Rita, and Loraine. Ernest, Henry, and Frutoso quitclaimed their interest to Rita Tafoya by deed in 1951. Loraine subsequently deeded her share after the trial.

The legal description in the 1951 deed was based on a survey performed by Bill West. The survey does not divide the property with a straight line; instead the boundary line contains a jog that, at the time of the survey, went around some corrals. Evidence of fencing on the West survey line is also indicated. There is additional evidence that the fencing and the survey were in existence at the time Plaintiffs received the property. In fact, when Plaintiffs took possession of the property, Rita Tafoya apparently even explained where the boundary was.

The trial court based its decision regarding placement of the boundary on historical evidence including the West survey. Under this survey the portions were not equal. Plaintiffs contend, however, that other historical evidence, as well as a recent survey, indicate the two portions of C.S. 306 were to be equal, is controlling. The historical evidence and the survey on which Plaintiffs rely, however, are only two pieces of evidence that must be considered together with the evidence of how the boundary was actually marked on the West survey. We believe there was sufficient evidence to support the determination of the trial court that the boundary should be the version found in the West survey.

Our review of this case supports the determination of the trial court. Therefore, we affirm.

IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.